PUSEY & JONES CO. v. MILLER et al.

(Circuit Court, D. Delaware. April 30, 1894.)

No. 153.

1. INTERPLEADER—BILL—DEMURRER.

A bill of interpleader against two defendants which shows on its face that one of the defendants has no claim, either legal or equitable, to the debt due from the complainant is demurrable.

2. PATENTS FOR INVENTIONS—LICENSE—RIGHTS OF CO-OWNERS.

Where a patent is owned by several parties, and one of them issues a license to a third person, the other owners have no claim against the licensee for any part of the royalty, their remedy, if any, being by suit against the licensor for an accounting.

In Equity. Bill by the Pusey & Jones Company against Mary Ann Miller and Will W. Bierce.

Benjamin Nields, for complainants.

Branch Giles and E. Clinton Rhoads, for defendant Miller.

WALES, District Judge. This is a bill in the nature of a bill of interpleader, by which the plaintiff seeks protection and relief from the conflicting demands of the defendants. The material facts in the case are these:

Mary Ann Miller, the executrix of Lewis Miller, and one of the defendants herein, has brought an action at law in this court against the plaintiff to recover the sum of $3,000, which is alleged to be due to the estate of Miller under the terms of a written contract between him and the plaintiff, dated January 14, 1892, whereby the plaintiff had agreed to pay to Miller that amount of money, as a license fee or royalty, for the right to construct a patented Taylor cotton press for Will W. Bierce, of the state of Alabama. The further sum of $212.40 is claimed by the executrix as a balance due to her husband's estate for royalties on other cotton presses built by the plaintiff. John F. Taylor, being the inventor and sole owner of all the patents covering what is known as "Taylor's Steam and Hydraulic Cotton Press," on the 23d of January, 1877, sold and assigned to Lewis Miller and William Boardman, each, one-third interest and share in and of these patents for all of the United States, excepting certain territory specifically reserved to the assignor. Prior to the making of this assignment, which was duly recorded, the parties named therein had, on the 19th of December, 1876, entered into articles of agreement (tripartite), wherein it was stipulated, among other things, that Boardman, in consideration of the assignment to him of a one-third interest in the patents, would advance to Taylor the sum of $25,000, and would also furnish to Lewis Miller such sums as the latter might require "to enable him to carry on the business of the concern." The advance of $25,000 to Taylor was to be reimbursed to Boardman by Taylor out of his one-third of the profits. Miller, by way of payment for the one-

third interest of the patents to be transferred to him, was to devote his time, attention, and energy to the building, selling, and using, or otherwise disposing of the inventions or patent rights. It was further agreed that the profits to be derived from the business should be shared equally between the parties, and that the losses sustained should be borne in like proportion. John F. Taylor, on July 20, 1892, sold and assigned to Will W. Bierce, one of the defendants, his remaining one-third interest in the cotton-press patents, and at the same time transferred to Bierce his share of all debts and claims, owing or unpaid, or which at any time might become due to him, under the agreement of December 19, 1876, from Lewis Miller and William Boardman, or either of them, their, or either of their, estates. Miller and Boardman had both died before the date of the assignment from Taylor to Bierce.

Will W. Bierce is indebted to the plaintiff in the sum of $9,901.41, with interest thereon, being a balance due and unpaid on a Taylor cotton press furnished by plaintiff to Bierce, and which the latter refuses to pay unless the plaintiff will deduct therefrom the sum of $3,212.40, claimed by Bierce as the assignee of Taylor. Bierce, as assignee of Taylor, has also brought a suit in equity, in the court of common pleas of Philadelphia, No. ———, against Mary Ann Miller, the executrix of Lewis Miller, and Hannah E. Boardman, the administratrix of William Boardman, for an accounting of the moneys received by the estates which they, respectively, represent, by virtue of the agreement of December 19, 1876, and of the assignment of January 23, 1877. In his bill, Bierce alleges that Miller and Boardman made large profits in operating the patents, to the one equal third part of which Taylor was entitled, but that neither Miller nor Boardman had ever rendered any account to Taylor, or to his assignee. Prior to the bringing of the action against the Pusey & Jones Company by Miller's executrix, Bierce had notified the company that the sum of $3,212.40, claimed by the executrix, and for which she now sues, belonged to him, and cautioned the company not to pay the same to the executrix. The Pusey & Jones Company now tenders itself ready and willing to pay the said sum of $3,212.40 to Miller's executrix, or to account for the same to Will W. Bierce, as this court may determine, and therefore prays that the defendants may be decreed to interplead, and settle between themselves their respective rights or claims, and that in the mean time the executrix of Miller may be enjoined from prosecuting her action against the company. Mrs. Miller, the executrix, has appeared by counsel, and entered a general demurrer to the plaintiff's bill. The subpoena was returned non est as to Bierce, and there has been no appearance for him.

The purpose of a bill of interpleader is to compel the claimants of the same thing, debt, or duty from the party liable therefor, to litigate their respective claims between themselves; the party liable being under no independent liability to any of the claimants, and being merely in the position of a stakeholder, without interest

in the matter himself. A bill in the nature of an interpleader lies by a party in interest to ascertain and establish his own rights, when there are other conflicting rights between third persons; as where a mortgagor wishes to redeem a mortgaged estate, and there are conflicting claims between third persons as to their title to the mortgage money, he may bring them before the court to ascertain their rights, and to have a decree for redemption, and to make a secure payment to the party entitled to the money. 2 Story, Eq. Jur. §§ 807–824. By the one bill the plaintiff seeks protection from rival claimants and a multiplicity of suits. By the other, he seeks relief, as well as protection. It is essential, in every bill of interpleader, that each of the defendants claims a right, and such a right as they may interplead for. If, in the facts set forth in the bill, it is evident that the claim of one of the defendants (there being only two) is not such that it can be sustained on legal or equitable grounds, there is no cause of interpleader. Id. § 821. And this requires that the claims of the defendants in the present case should be investigated. On the contract of January 14, 1892, between Lewis Miller and the Pusey & Jones Company, there can be no doubt of the liability of the company to Miller's estate; and unless Bierce can show a superior right to the money in controversy, or a well-founded legal or equitable claim to it, the plaintiff's bill cannot be sustained. Bierce, as assignee of Taylor, is the owner of whatever rights were held by the latter, at the time of the assignment, in the cotton-press patents, and to the profits derived from them, under the partnership articles of December 19, 1876, between Taylor, Miller, and Boardman. As between the three partners, Taylor was undoubtedly entitled to one-third of the income from the patents during the existence of the partnership; but when that partnership was dissolved by the death of Boardman, on July 14, 1891, the mode of division provided for in the articles came to an end. There was no provision in the articles for a continuance of the partnership after the death of any one of its members. As far as can be gathered from the bill and exhibits, the partnership was a secret one, and had never transacted business, as a firm, with third parties. The cotton-press patents were not, and had never been, owned or operated by the firm. The interest in the patents which was owned and held by each member of the firm was his own individual and separate property, and constituted no part of the firm's assets; and, immediately upon the dissolution of the firm, each one of the surviving members was no longer accountable to the other, as a partner, for a division of the profits which he might thereafter make from the working of the patents himself, or by issuing licenses to others to use them. Such being the relation of Taylor and Miller to these patents, on January 14, 1892, and long after the partnership had ceased to exist, it becomes pertinent to inquire what right or interest Taylor could have in the royalties which the Pusey & Jones Company contracted to pay to Miller, and on which the executrix of Miller has now brought an action against the plaintiff in this bill. It is unnecessary to consider the extent

of Miller's accountability to Taylor for moneys received by the former during the partnership. The debt in controversy between the defendants was incurred after the partnership had ended, when Taylor and Miller had become nothing more than co-owners, or tenants in common, of the patents; each being at liberty to use his property, at his own discretion, for his own profit and advantage, with a possible liability to account for royalties if one should receive more than the other. The rights and liabilities of the co-owners of a patent, when not modified by contract or agreement among themselves, in respect to royalties received by them, in the light of all the authorities on the subject, may be stated thus: Where a patent belongs to several persons in common, each co-owner can assign his share, and sue for an infringement, and can also work the patent himself, give licenses to work it, and sue for royalties payable to him for its use, and is entitled to retain, for his own benefit, whatever profit he may derive from the working, although he may be liable to account for what he receives in respect of the licenses. 1 Lindl. Partn. 62; Sheehan v. Railroad Co., 16 Ch. Div. 59; Mathers v. Green, L. R. 1 Ch. App. 29; Clum v. Brewer, 2 Curt. 506, Fed. Cas. No. 2,909; Curran v. Burdsall, 20 Fed. 837; Manufacturing Co. v. Gill, 32 Fed. 697; De Witt v. Manufacturing Co., 66 N. Y. 462; Gates v. Fraser, 9 Ill. App. 628; Hall, Pat. Est. 75. In Dunham v. Railroad Co., 2 Ban. & A. 327, 7 Biss. 223, Fed. Cas. No. 4,151, it was said by Judge Drummond that, where a party owning less than the whole of the thing patented makes a grant or license under the patent, it would seem the better rule to hold, if there is any liability at all, that he shall be answerable to the others, rather than the other patentees shall look to the grantee or licensee. In Curran v. Burdsall, supra, the court held that, if one of several joint patentees assigns to a third party, the estoppel upon the assignor must work a license to the assignee to use the patent, and the joint owners of the patent must look to the one who assigns, for an accounting. The rule deducible from the authorities would seem to be that the license of one or more of several owners in common of a patent confers a right as against all, and that the remedy of the other tenants in common, if they have any, is by a suit for an account for whatever may have been received by them. In other words, the licensee of a patent held by two or more co-owners is liable to his licensor only, and not to the other co-owners, for license fees or royalties, unless it is otherwise stipulated in the license.

All of the items contained in the bill of particulars filed by the plaintiff in the pending action of Miller's Executrix v. The Pusey & Jones Company are for debts incurred after the dissolution of the partnership between the owners of the cotton-press patents, and to none of which could Taylor, or his assignee, have any claim. The Pusey & Jones Company became indebted to Miller under an independent contract with him in respect to the patents, and the company is responsible only to Miller's estate for whatever may be due under that contract, as well as under other agreements made with Miller after the dissolution of the partnership. The argument

of the demurrer by counsel took a very wide range, but in my view, without adding any others, sufficient reasons have been assigned for dismissing the plaintiff's bill, with costs, and it is so ordered.