**HAYES v. TOOTLE–LACY NAT. BANK et al.**

**No. 1004.**

Circuit Court of Appeals, Tenth Circuit.
July 27, 1934.

---

**430**

E. R. Sloan and Albert M. Cole, both of Holton, Kan., for appellant.

John L. Hunt, of Topeka, Kan. (Bennett R. Wheeler, S. M. Brewster, Margaret McGurnaghan, and Ralph M. Hope, all of Topeka, Kan., on the brief), for appellee Central Nat. Bank.

Brown, Douglas & Brown, of St. Joseph, Mo., for appellee Tootle-Lacy Nat. Bank.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

The First National Bank of Holton, Kansas, which failed on May 22, 1931, was a depositor of The Tootle-Lacy National Bank of St. Joseph, Missouri. The Central National Bank of Topeka, Kansas, was another customer of the St. Joseph Bank. On May 14, the Topeka bank sent to the St. Joseph bank for collection a cashier's check of the Holton bank for $2,138.26. The St. Joseph bank sent this check, along with other items aggregating $3,948.35, directly to the Holton bank for payment. The Holton bank honored these items on May 16, and sent a credit memorandum to the St. Joseph bank for that amount. On the same day, the Holton bank sent the St. Joseph bank, for deposit, items aggregating $6,222.27, which included a draft for $5,000 on a Kansas City bank. Upon receipt of this memorandum on May 18 (May 17 being Sunday) the St. Joseph bank charged the Holton bank with $3,948.35 as directed, and credited it with $6,222.27. Before this charge and credit, there was a balance of $2,437.19 to the credit of the Holton bank. After these entries, the Holton bank's credit balance was $3,659.46. The Kansas City bank dishonored the $5,000 draft; whereupon the St. Joseph bank charged $5,000 back to the Holton bank, which left the Holton bank overdrawn. The St. Joseph bank then ran a line through the charge of $3,948.35 and another charge of $2,119.98; this, the St. Joseph and Holton banks claim, transformed the overdraft into a credit balance of $2,952.78 which has been tendered into court.

The receiver of the Holton bank demanded the credit balance so disclosed. The Topeka bank claimed that since the St. Joseph bank, as a collection agent, had in fact collected the item of $2,138.26, it should remit the sum so collected to its principal.

Confronted by these two claims, one as a depositor for a balance in his account, and the other by a principal for failure to remit mon-

eys collected as an agent, and the amount which it conceded owing being less than the two claims, the St. Joseph bank brought this action which, in its brief in this court, it styles a bill of interpleader. Its bill states the above facts and prays that it be permitted to pay $2,952.78 into court and be relieved of the obligations asserted by the two defendants, aggregating $5,091.04. The action involving the winding up of the affairs of a national banking association, it was removed to the United States court. 28 USCA § 41 (16); Moulton v. National Farmers' Bank (D. C. Minn.) 27 F.(2d) 403.

Neither of the defendants challenged directly the right of the plaintiff to a discharge from claims aggregating $5,091.04 by the payment of $2,952.78 into court, except in so far as the answers each contain a general denial coupled with admissions of the specific facts affecting the answering defendant.[1] The receiver of the Holton bank alleged that plaintiff was indebted to him for the balance of the deposit, and prayed for judgment for the amount thereof. The Topeka bank alleged that plaintiff, as agent for the Topeka bank, had collected $2,138.26 and failed to remit, and asked judgment for that sum. The plaintiff has not challenged the right of· defendants to ask for affirmative relief. City of Los Angeles v. Amidor, 140 Cal. 400, 73 P. 1049. Instead, all parties went to trial upon an agreed statement of facts and submitted the cause for decision.

The trial court held that the Topeka bank was entitled to recover $2,138.26 with six per cent interest from May 14, 1931, and judgment was rendered accordingly; it was ordered that plaintiff pay $2,952.78 into court

and that the Topeka bank's judgment should be paid out of that sum, or, if plaintiff did not pay such sum into court, then execution to issue. The St. Joseph bank paid such sum into court. No order was entered upon plaintiff's prayer for a discharge from both claims, and no judgment rendered on the receiver's claim against the plaintiff. No disposition has been made of the balance of the sum paid into court after satisfying the judgment of the Topeka bank.

The St. Joseph bank has not appealed, either from the judgment in favor of the Topeka bank, or from the order directing it to pay the money into court without discharging it from its obligations to both defendants. Instead, it has complied with the order. Whether it was entitled to a discharge, or whether its bill stated a cause in interpleader, is therefore not before us. In a very similar case, Mr. Justice Holmes doubted whether the case was one of interpleader, but said that "still as all parties consented to the jurisdiction we do not feel called upon to raise a question upon that score. See McGowan v. Parish, 237 U. S. 285, 295, et seq., 35 S. Ct. 543, 59 L. Ed. 955." Levinson v. United States, 258 U. S. 198, 200, 42 S. Ct. 275, 276, 66 L. Ed. 563.

The only appeal is by the receiver of the Holton bank. Since his claim has not been adjudicated, it is very difficult to see what interest he has in a decision of the controversy between the Topeka and St. Joseph banks over an agency relationship to which he is a stranger. If the Topeka and St. Joseph banks are satisfied with the outcome of their controversy—and neither has appealed—it is

---

[1] Courts of respectable authority have adopted Pomeroy's statement that the requisites of an action in interpleader are (1) a substantial dispute among the defendants as to the ownership of or right to a particular fund or specific property; (2) the adverse claims must be derived from a common source; (3) the plaintiff must have incurred no independent liability to any claimant, but must stand, as a neutral stakeholder, indifferently between them; (4) if the hazard which plaintiff seeks to avoid has been occasioned by his own act, he is not entitled to the remedy. Pomeroy's Eq. Juris., vol. IV, § 1459, et seq.; Calloway v. Miles (C. C. A. 6) 30 F.(2d) 14; Morgan v. Kraft, 52 App. D. C. 172, 285 F. 906; Hayward & Clark v. McDonald (C. C. A. 5) 192 F. 890; Wells, Fargo & Co. v. Miner (C. C. Cal.) 25 F. 533; McWhirter v. Halsted (C. C. N. J.) 24 F. 828; Bedell v. Hoffman, 2 Paige (N. Y.) 199. It has also been held that a bill of interpleader will not lie unless the establishment of plaintiff's liability to one claimant will defeat his liability to the other, or if the amount due from plaintiff is the subject of controversy, Smith v. Mosier (C. C. N. Y.) 169 F. 430; Morgan v. Kraft, supra; and that interpleader will not lie by an agent against his principal and a third party claiming the fund by an independent title. Hayward & Clark v. McDonald, supra. If the principal claims some interest in the subject matter, but there are conflicting claimants to the part to which plaintiff asserts no claim, it has been held that an action in the nature of interpleader will lie. Groves v. Sentell, 153 U. S. 465, 486, 14 S. Ct. 898, 38 L. Ed. 785; Hayward & Clark v. McDonald, supra.

not at all clear that the receiver has any legal right to object. However, the receiver is at least an interested bystander, for the decision that the cashier's check had been paid by a charge to the account of the Holton bank in the St. Joseph bank, will be at least a persuasive authority when the receiver's contention to the contrary is heard in the trial court. But there has been no motion to dismiss his appeal, and we pass to the merits.

■ The St. Joseph bank was the agent of the Topeka bank for the purpose of collecting an item from the Holton bank. If the Holton bank paid the St. Joseph bank, then the St. Joseph bank, having made the collection, must remit the amount collected to its principal, the Topeka bank. The question is, Did the Holton bank pay the St. Joseph bank?

The Holton bank authorized the St. Joseph bank to charge the account of the Holton bank with this item. The authorization was in the form of a credit memorandum, but the legal effect is identical with a check drawn by the Holton bank on the St. Joseph bank. The St. Joseph bank could have dishonored this check and demanded a return of the cashier's check or the cash. Or, it could honor the check and permit the Holton bank to retain the cashier's check. It did the latter, and charged the account of the Holton bank as requested. Thereupon the collection was made. The fact that the St. Joseph bank hoped and expected that another check of $5,000 sent by the Holton bank for deposit would be paid, and that it was later dishonored, does not alter the situation; that is a matter of which the Topeka bank had no knowledge or concern. The St. Joseph bank could have declined to honor the check of the Holton bank until the $5,000 check cleared, but it did not do so.

■ The law is entirely clear that if a check is presented to the bank upon which it is drawn, and accepted by payment in cash or credit unconditionally given, the payee cannot be required to reimburse the bank because the check overdrew the drawer's account. When a check is so presented, the bank must then decide to accept it, absolutely or conditionally, or dishonor it. When it accepts it unconditionally, the check is paid, and the incident closed.

In First Nat. Bank v. Burkhardt, 100 U. S. 686, 689, 25 L. Ed. 766, the decision turned on whether a check was paid by the bank on which it was drawn the moment it was accepted from another customer for deposit, or not until it was charged to the depositor's account after banking hours. The court said:

"When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract."

In American Nat. Bank v. Miller, 229 U. S. 517, 520, 33 S. Ct. 883, 884, 57 L. Ed. 1310, a depositor drew a check on a Nashville bank in favor of another customer of the bank. The Nashville bank charged the check to the drawer's account and credited the payee's account. The drawer went into bankruptcy an hour before these entries were made. When the bank learned this, it reversed the entries. The Supreme Court held it was too late, saying:

"There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting the transaction is closed, and, in the absence of fraud or mutual mistake, is equivalent to payment in usual course. First Nat. Bank v. Burkhardt, 100 U. S. 686, 689, 25 L. Ed. 766, 768. In the present case it was as though an officer of the Macon bank had presented the check to the teller of the Nashville bank, and, on receiving the money, had paid it back over the counter for deposit to the credit of the Macon bank."

The Supreme Court of Kansas, construing the Uniform Negotiable Instruments Law, tersely stated the rule in a syllabus (by the court) in Chamberlain, etc., Co. v. Bank of Pleasanton, 98 Kan. 611, 160 P. 1138:

"Under the Negotiable Instruments Act. * * * an ordinary bank check is a bill of exchange * * * and when it is presented to and retained by the bank and the account of the maker is charged therewith, the bank is liable to the payee as an acceptor."

The contention that since the payment was induced by the expectation that the $5,000 check would be paid, and since it was not paid, the transaction may be undone is completely answered by the opinion of Judge Walter H. Sanborn, adopting the exhaustive opinion of Judge Booth on the district, in Security Nat. Bank v. Old Nat. Bank (C. C. A. 8) 241 F. 1, 8. The facts are very close to the facts here. There a bank, having items

for collection, accepted a check on itself in payment thereof, the acceptance being induced by a deposit of other checks made about the same time. Before remittance by the collecting bank was accomplished, the checks deposited were dishonored, and the collecting bank refused to pay its principal. The principal bank sued the collecting bank for the proceeds of the collection and recovered. Judge Sanborn summarizes the applicable rule as follows:

"A bank, which honors and pays a note, draft, or check of one of its customers upon his order, in the mistaken belief that the credit balance of that customer is larger than it in fact is, or in the futile hope or mistaken belief that checks or notes which the bank has credited to the account of that customer will be paid in the regular course of business, is estopped, as against the owner of such paid note, check, or draft, from revoking or avoiding such payment on account of such mistake or futile hope: (1) Because of the intolerable delay, uncertainty, and confusion that would result in commercial transactions, if the validity of such payments were to remain in doubt until such possible mistakes should be discovered and corrected; (2) because such a bank may know the state of its own accounts, and it can make such mistakes only through its own laxity or negligence, or its own assumption of the risk of future payments; and (3) because the owner of the note, check, or draft has no means of knowing the state of the customer's account."

To the same effect, see First Nat. Bank of Denver v. Devenish, 15 Colo. 229, 25 P. 177, 22 Am. St. Rep. 394; Spokane & Eastern Trust Co. v. Huff, 63 Wash. 225, 115 P. 80, 33 L. R. A. (N. S.) 1023, Ann. Cas. 1912D, 491.

▮ The judgment below is right for another reason. In the statement of facts, the parties agree that the St. Joseph bank transmitted the cashier's check to the Holton bank and that "The First National Bank of Holton retained said check and ever since said date said check has been in the hands of said bank and the receiver."

In Federal Reserve Bank v. Malloy, 264 U. S. 160, 165, 44 S. Ct. 296, 298, 68 L. Ed. 617, 31 A. L. R. 1261, the collecting bank sent a check to the bank on which it was drawn for payment. That bank stamped the check paid, retained it, and remitted by draft to the collecting bank. The draft was dishonored. It was held that the collecting bank was liable

to its principal, the owner of the check, the court saying in part:

"It is settled law that a collecting agent is without authority to accept for the debt of his principal anything but 'that which the law declares to be a legal tender, or which is by common consent considered and treated as money, and passes as such at par.' Ward v. Smith, 7 Wall. 447, 452, 19 L. Ed. 207. The rule applies to a bank receiving commercial paper for collection, and if such bank accepts the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for any resulting loss. Fifth National Bank v. Ashworth, 123 Pa. 212, 218, 16 A. 596, 2 L. R. A. 491; Hazlett v. Commercial National Bank, 132 Pa. 118, 125, 19 A. 55; National Bank v. Bank, 151 Mo. 320, 329, 52 S. W. 265, 74 Am. St. Rep. 527; Essex County National Bank v. Bank of Montreal, 7 Biss. 193, 8 Fed. Cas. page 789, No. 4532; Noble v. Doughten, 72 Kan. 336, 351, 353, 83 P. 1048, 3 L. R. A. (N. S.) 1167; Anderson v. Gill, 79 Md. 312, 317, 29 A. 527, 25 L. R. A. 200, 47 Am. St. Rep. 402; Bank of Antigo v. Union Trust Co., 149 Ill. 343, 351, 36 N. E. 1029, 23 L. R. A. 611. It is unnecessary to cite other decisions, since they are all practically uniform."[2]

▮▮ The receiver's contentions are not entirely clear. He says he has no objection to the judgment rendered except that it is to be paid out of funds in the hands of the clerk. Such direction in no way abridges the rights of the receiver against the St. Joseph bank, it being a solvent institution entirely able to respond to any proper claim of the receiver. Again, it is urged that if it is held that this collection was made when the $2,138.26 was charged to the Holton bank's account, then the other items making up the $6,068.33 charged the same day ought to be accorded the same treatment. If they stand in the same stead as the $2,138.26 item, and were in this litigation, the same rules would be applied. In any event, no reason is apparent why a depositor should object if his bank honors one of his checks and dishonors others, if his balance was insufficient to pay them all.

These settled principles determine this case. The attempted reversal of the charge of $2,138.26 was ineffective. The St. Joseph bank is liable to the Topeka bank for the amount collected by it with interest from the date of collection. The St. Joseph bank is liable to the receiver for the balance in the account of the Holton bank, after effect is given

---

[2] Cited with approval in Dakin v. Bayly, 290 U. S. 143, 54 S. Ct. 113, 78 L. Ed. 229.

to all charges properly made, with interest from the date of demand. The sum paid into court, with interest accretions if any, may properly be used to discharge such liabilities, when determined, as far as it may reach. The balance, if any, is collectible on execution.

Judgment affirmed.